459 So.2d 586 (1984)
Joseph R. EVANS, individually, and on Behalf of the Minor, Laura Evans, and May M. Evans
v.
Denis O. NEWTON, Ambassador Insurance Co., and State Farm Mutual Automobile Insurance Co.
No. 84-CA-250.
Court of Appeal of Louisiana, Fifth Circuit.
November 13, 1984.
Clarence F. Favret, III, New Orleans, for plaintiff-appellant.
Lobman & Carnahan, Burt K. Carnahan, Metairie, for defendant-appellee.
Before BOUTALL, CURRAULT and GRISBAUM, JJ.
GRISBAUM, Judge.
This is a personal injury case resulting from an automobile accident in a shopping center parking lot. The plaintiffs-appellants, Joseph Evans (individually and on behalf of his minor child, Laura,) and May Evans, devolutively appeal from a judgment *587 (incorporating a jury trial verdict) finding May Evans 50 percent at fault and awarding to her and her husband medical expenses against State Farm of $4091.38 thereby entitling them to a judgment of $2045.69. We amend and affirm.
Two issues are presented:
(1) Whether the jury erred in finding the plaintiff negligent (50 percent); and
(2) Whether the jury abused its "much discretion" in not awarding plaintiff general damages.
The facts surrounding the legal cause of the accident are in dispute. Ms. Evans testified to the following events which preceded the accident:
I started my car up and went into the driving lane... started driving towards Transcontinental. He was crawling very, very slowly ... the fire lane. There was a lady in the truck with him. Well, I was driving very slowly and he kept creeping, stopped, hesitated a moment, and he continued and I kept going very slow ... because I didn't know exactly where the truck was headed for ... He continued straight up to Eckerd's and I'm still traveling going towards Transcontinental and when he got by Eckerd's he's here ... and all of a sudden he just swerved into the right lane and hit me, I mean he turned left and hit me on the right side of my car ... there was no signal. I looked at my little girl `cause she hit the dash on her head, I hit the uh my head hit the wheel steering wheel and then I got out and said I was going to call the cops, the police at least ... my knee at the top here hit the steering, I mean the dashboard.
Whereas Mr. Newton testified to the following:
... [he was] progressing towards Eckerd's... when I got in front of Winn-Dixie I had to slow down because of the people coming through with carts and stuff ... when I was clear to travel I progressed down towards Eckerd's. I was not accelerating when I was slowing down. My truck was idled high enough where I did not have to move the accelerator and all I had to do was ride my brake and my idle would keep me going. I was probably going a little bit over zero miles an hour. I got right about the edge of Eckerd's ... I started to turn into the parking spot ... when the Evans' vehicle raced across in front of my vehicle and I slammed on my brakes ... as she slammed on her brakes so severely that her head almost hit the steering wheel ... the little girl in the front seat slammed into the dashboard and the little girl in the backseat almost hit the floorboard... On my car I have extra-wide mirrors with the peripheral vision I would have noticed another vehicle trying to pass, trying to attempt to pass me to the left. I had no warning at all except when I started to turn her vehicle appeared in front of me. It appeared that she was speeding to try to get ahead of me before I could turn.
As an aid in exercising our standard of review, our circuit in Baach v. Clark, 442 So.2d 514, 517 (La.App. 5th Cir.1983) embraced the method outlined in Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821, (1970) in determining legal fault by first determining whether the act complained of was a substantial factor in causing the accident, then by determining what duty was imposed and whether the risk of harm suffered and created by a failure of that duty was a risk for which the statute intended to offer protection, and, finally, by determining whether there was a breach of that duty. The Pierre court further stated that every act leading up to an accident is not a cause-in-fact; to be deemed a legal cause, the act must be a substantial factor without which the accident would not have occurred.
Before applying the foregoing methodology of the "duty-risk" analysis, we are further guided by the Baach decision wherein it is stated:
It is firmly established that the operator of a following vehicle is required to keep his car under control, to observe closely a forward vehicle, and to follow at a safe distance. As mentioned earlier, if a rear *588 end collision occurs, the following motorist is presumed negligent. In order for the following who collides with a preceding vehicle to exculpate himself, he must show that he closely observed the forward, that he followed at a safe distance under the circumstances, or that the driver of the lead vehicle negligently created a hazard which the following vehicle could not reasonably avoid.
In light of the foregoing, the ultimate question before us is whether Mr. Newton, the driver of the lead vehicle, negligently created a hazard which Ms. Evans, the driver of the following vehicle, could not reasonably avoid. On Mr. Newton's own admission and his testimony which was elicited at trial, we know he failed his legal duty to look into his rearview prior to making his left turn. Whereas Ms. Evans testified she was following at the same (slow) speed and was reluctant to pass without first ascertaining Mr. Newton's intentions. She also testified that she then pulled past the truck driven by Mr. Newton only after satisfying herself that he was going to continue "creeping" along the curb. From these record facts, it appears from the testimony and evidence Ms. Evans met her duty of due diligence in the operation of her car and was not put on notice of Mr. Newton's intention to make a left turn. However, the jury apparently disbelieved her testimony and believed Mr. Newton's testimony that Ms. Evans suddenly zoomed in front of him. Therefore, the jury apparently reasoned, and we agree, that even though Mr. Newton's negligence created a hazard but for Ms. Evans "zooming in front of him" she could have reasonably avoided the accident. Ms. Evans' act of speeding was a substantial factor in causing the accident and a fact which demonstrated she violated her duty in her capacity as the "following vehicle."
Recognizing the trier of fact's finding as to the percentage of fault is factual, such a determination will not be disturbed on appeal unless it is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We find no manifest error in this jury's factual determination and application of the applicable law regarding the apportionment of fault, and therefore, it did not err in finding the plaintiff comparatively negligent to the extent of 50 percent.
Regarding the question of whether the jury abused its much discretion in not awarding the plaintiff general damages after finding special damages, our scope of appellate authority is limited; however, we may amend a district court judgment by awarding only those damages which would be reasonably within the discretion of the lower court. Reck v. Stevens, 373 So.2d 498 (La.1979). The Reck court further stated that it is only after articulated analysis of fact discloses an abuse of discretion that an award may on appellate review, for articulated reasons, be considered either excessive or insufficient. Additionally, as clarified in Odendahl v. Wild, 418 So.2d 36 (La.App. 4th Cir.1982), it is stated that although a jury has much discretion in assessing damages, it errs as a matter of law in awarding no general damages for objective injuries. Odendahl states the rule as follows:
It is error of law to award special damages for medical expenses and nothing for personal injury, pain, and suffering. When the trier of fact, either judge or jury, itemizes damages for medical expenses, as in this case, and omits damages for personal injury, pain, and suffering, the error of law is apparent. Roy v. Schneider, 367 So.2d 1314 (La.App. 4th Cir.1979); Robinson v. General Motors Corporation, 328 So.2d 751 (La.App. 4th Cir.1976).
In considering the damages to be awarded, we shall review Ms. Evans' pertinent medical history. Plaintiffs, May Evans, and her daughter, Laura Evans, were injured in the January 16, 1981 accident and after the accident, plaintiffs initially saw Dr. Gaybaur, their family physician, who eventually referred Ms. Evans to Dr. Kennerth E. Vogel, a neurosurgeon. Over a period of two years, she saw Dr. Vogel on five different occasions. Initially, the doctor's *589 examination revealed mild limitation of motion in the neck and low back with involuntary muscle spasms on the right, and she was placed on a treatment plan of physical therapy, heat and massage, and medicine for pain. In November 1982, she was not improving and was experiencing discomfort. At that time (some 22 months after the accident) Dr. Vogel performed a CAT scan. Because the test revealed an abnormal disc (Dr. Vogel also found with a pin-prick test mild numbness of the little toe of her foot), Ms. Evans elected to have more tests and treatment in the hospital. These tests, a discogram and an anthrogram, were described as very painful requiring many needles to be struck through the back and dyes injected. In February 1983 (some 13 months after hospital treatment) Ms. Evans had responded partially to treatment but still complained of headaches, low backaching, right leg pain, and leg numbness. (She states that her leg freezes up periodically when she is driving, and she cannot lift her foot from the accelerator.) On May 3, 1983, there were no remaining objective symptoms, only complaints not verifiable on an objective basis, and she was again placed under Dr. Gaybaur's care. Dr. Vogel's final diagnosis was chronic cervical and lumbar sacral strain and prognosis plaintiff had reached maximum improvement. Whatever symptoms she still had would persist. On the other hand, defendant, State Farm, introduced into the record the report of Dr. Richard Levy, who had been hired by them to examine Ms. Evans and whose examination revealed no present neurological disability associated with the accident.
Ms. Evans testified that she tires easily, cannot do her household chores, and her marital relationship is strained. These symptoms were corroborated by her husband, Joseph Evans, and the daughter. It was their testimony that prior to the collision Ms. Evans was an efficient housekeeper, good mother and wife, did such things as the mowing, heavy housecleaning, shopping, and chauffeuring of the children to their activities.
Considering the record facts and our jurisprudential guidelines, we find the jury abused its much discretion in not awarding Ms. Evans general damages after awarding her special damages. Accordingly, since Ms. Evans has proven personal injury, a chronic cervical and lumbar sacral strain that caused pain and suffering for an approximate 28-month period, we award $10,000 damages for those injuries thereby entitling Ms. Evans to a judgment of $5000.
For the reasons assigned, we amend the trial court's judgment to include $5000 as general damages. Otherwise, we affirm all other aspects of the judgment and assess costs of this appeal against the appellee.
AMENDED AND AFFIRMED.