545 So.2d 581 (1989)
Arthur BIENVENU and Wendy B. Bienvenu
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.
No. 88-CA-910.
Court of Appeal of Louisiana, Fifth Circuit.
May 10, 1989.
On Rehearing June 16, 1989.
*582 Wayne C. Giordano, A Professional Law Corp., Belle Chasse, for plaintiffs-appellants.
Sessions, Fishman, Boisfontaine, Nathan, Winn, Butler & Barkley, James Ryan, III, Peter S. Title, New Orleans, for defendants-appellees.
Before CHEHARDY, C.J., and GAUDIN and DUFRESNE, JJ.
CHEHARDY, Chief Judge.
The plaintiffs, Arthur and Wendy Bienvenu, appeal from a judgment rendered partially in their favor against defendants, Andre and Patricia Sigler, and their insurer, State Farm Mutual Automobile Insurance Company (State Farm). The judgment was handed down following a jury trial in an automobile collision case.
On appeal, plaintiffs present 19 specifications of error. Three of the errors specified relate to the jury's apportionment of fault and three to the award of damages. One error presented by plaintiffs involves an offset of the damages which was given to defendants pursuant to the percentage of fault attributed to plaintiff Arthur Bienvenu. The remaining alleged errors concern the admission of certain items of evidence, jury instructions, remarks made in closing arguments, comments made by the trial judge during the proceedings, and the failure of the trial judge to divide the jury's award of medical expenses into past and future expenses.
On the afternoon of July 20, 1986, Arthur Bienvenu, his wife Wendy and their child were driving around an area in Gretna, Louisiana, looking at houses for sale. After stopping for a late lunch at McDonald's Restaurant on Lapalco Boulevard, the Bienvenus crossed the roadway and pulled into a nearby U-turn lane. It had been raining and the streets were wet.
Defendant Patricia Sigler was travelling on Lapalco in the same direction as the Bienvenu vehicle was facing while in the U-turn lane. Mrs. Sigler struck the Bienvenu vehicle on the left rear bumper causing the Bienvenu vehicle to collide with a pick-up truck stopped in front of it, which *583 was owned and driven by Clyde Whatley. No one evidenced any injuries at the scene, but later that evening Mrs. Bienvenu began suffering pain in her neck and back.
As a consequence of the collision, the Bienvenus filed suit against the Siglers and their insurer, State Farm, for property damage to their vehicle and for personal injury damage suffered by Mrs. Bienvenu. In response, defendants filed a third-party demand against Arthur Bienvenu, and, additionally, State Farm filed a reconventional demand against Mr. Bienvenu to recover $1,783.38 it had previously paid to its insureds for their property damage in the collision.
On May 9, 10 and 11, 1988 a jury trial was held. Following the trial the jury found plaintiff Arthur Bienvenu to be 55% at fault and defendant Patricia Sigler to be 45% at fault in the accident. The jury then awarded plaintiffs $13,000 for Mrs. Bienvenu's lost wages and $8,000 for her medical expenses. It was stipulated that the Bienvenus suffered $297.49 in damages to their vehicle, a van. No award was made for pain and suffering.
In his judgment, the trial judge allocated the percentage of fault to the property damages sustained by each party (as agreed upon by the parties), as well as the personal injury amounts. Consequently, the defendants were ordered to pay plaintiffs $9,583.87, plus interest for their damages. Arthur Bienvenu was then ordered to pay State Farm $980.86, plus interest on the reconventional demand filed by State Farm. Costs were apportioned according to the percentages of fault attributed to Patricia Sigler and Mr. Bienvenu except for the jury costs, which were assessed solely against State Farm.
Plaintiffs' first two specifications of error contend the jury erred in finding plaintiff Arthur Bienvenu 55% at fault in the accident. In this regard, plaintiffs argue three impartial witnesses who were also involved in the accident testified the plaintiffs were in the turning lane for at least a minute to a minute and one-half before the collision, and that plaintiffs' van was not protruding into the lane of traffic. Thus, they concluded that plaintiffs proved Mr. Bienvenu was not at fault by a preponderance of the evidence. Secondly, plaintiffs contend Mrs. Sigler's sole testimony contradicting plaintiffs' witnesses' testimony was insufficient to exculpate her from 100% fault.
The evidence as to how the accident occurred was contradictory. Plaintiffs testified they left the parking lot of McDonald's by way of Alex Kornman Street, a roadway running alongside of McDonald's and which intersects Lapalco Boulevard. The Bienvenus asserted they then crossed Lapalco, turned right into the far lane and proceeded into the U-turn lane located almost directly across from the McDonald's they had just exited. Arthur and Wendy Bienvenu both stated they stopped in the U-turn lane because a pick-up truck was ahead of them waiting to make its turn. The Bienvenus contended they remained stopped for one or one-and one-half minutes after which the defendant hit the rear of their vehicle, causing plaintiffs' vehicle to collide with the pick-up truck. They also asserted the rear of their van was not protruding into the lane of traffic.
After the accident, the various parties examined their vehicles for damages and the accident was reported to the police. The pick-up truck showed no damage, but the plaintiffs' van sustained minor damage to the rear bumper and the Sigler car sustained damage to the front of the vehicle.
Defendant Patricia Sigler testified she left her home in a nearby subdivision and turned on Lapalco where she proceeded to drive in the left lane of traffic. She stated she saw the plaintiffs' vehicle pull out from McDonald's parking lot directly onto Lapalco. Mrs. Sigler stated plaintiffs' vehicle crossed both lanes of traffic and pulled into the U-turn lane where it stopped. Defendant asserted the rear end of the van was partially sticking out in the traffic lane in which she was travelling. She stated she put on her brakes in an attempt to avoid striking the van, but was unable to do so because the road was wet from the previous rain and because Mr. Bienvenu pulled in front of her too quickly. She insisted *584 the plaintiffs' van was not stopped for the length of time alleged by plaintiffs and their witnesses.
Four witnesses were called to testify to support the plaintiffs' version of the accident: Michael Albarado, the investigating police officer; Clyde Whatley, driver and owner of the pick-up truck struck by plaintiff; his wife, Merline, a passenger in the pick-up truck; and Gilda Lavigne, another passenger in the Whatley's truck. According to the latter three witnesses, they were stopped in the U-turn lane waiting for an opportunity to make a U-turn on Lapalco when plaintiffs' van drove into the lane behind them. They asserted the van was not protruding into the left-hand traffic lane as claimed by Mrs. Sigler. They also claimed the van was stopped for one to one-and-one-half minutes before being struck by defendant's vehicle. The three witnesses acknowledged, however, that they were talking and not paying a great deal of attention to the time or to the van before the collision.
Officer Albarado investigated the accident and testified that Mrs. Sigler told him she struck the van after she attempted to enter the U-turn lane. He also stated Mrs. Sigler said she entered the U-turn lane after leaving the parking lot next to McDonald's. Officer Albarado noted the weather was cloudy, it had been raining and the streets were wet at the time of the accident. He testified further that the plaintiffs' van was slightly damaged on the left rear side and in front of the vehicle.
When the appellate court reviews the findings of the trial court, it must give great weight to the trier-of-fact's factual findings and conclusions, and where there is conflicting testimony, the reasonable inferences of fact and evaluations of credibility reached by the judge or jury will not be disturbed, absent manifest error. Canter v. Koehring Company, 283 So.2d 716 (La. 1973). The manifest error rule applies to a finding of percentages of fault. Clement v. Armoniet, 527 So.2d 1004 (La.App. 5 Cir.1988).
The jury listened to conflicting testimony in this case, after which it found Arthur Bienvenu to be 55% at fault and defendant 45% at fault in the accident. That finding was reached despite the officer's testimony and the three witnesses testifying in support of plaintiffs' version of the accident. However, the officer's testimony apparently confused the parties and their statements at the accident scene. Further, witnesses are not counted, but weighed: the weight to be given evidence is not determined by the number of witnesses on either side. Duhon v. Slickline, Inc., 449 So.2d 1147 (La.App. 3 Cir.1984), cert. denied, 452 So.2d 172 (La.1984).
In addition to the witnesses' testimony, the jury had the benefit of photographs of the plaintiffs' damaged vehicle, which showed damage to the left side of the rear bumper. While plaintiffs argued the damage was caused in that manner by Mrs. Sigler's loss of control of her vehicle, it could also show the plaintiffs' van was protruding into the lane of traffic occupied by defendant. After reviewing this evidence, as well as the testimony, we cannot say the jury was clearly wrong in its apportionment of fault.
In plaintiffs' next specification of error it is argued the total award was unfairly calculated, because it deducted and offset Arthur Bienvenu's percentage of fault from Wendy Bienvenu's recovery. Since Wendy Bienvenu was not at fault, plaintiffs assert the offset is unfair.
LSA-C.C. art. 2344 provides that community property includes the portion of personal injury damages attributable to expenses incurred by the community or attributable to compensation for the loss of community earnings. Thus, Wendy Bienvenu's award for medical expenses and loss of earnings is a community asset since there is no claim the parties live under a separate property regime. In addition, the obligation incurred by Arthur Bienvenu to contribute to the payment of damages is a community obligation. LSA-C.C. arts. 2345 and 2360. Consequently, we find no error in the judgment which offsets the award, essentially granting defendants' third-party and reconventional demands against Arthur Bienvenu and resulting in *585 Wendy Bienvenu receiving 45% of her awarded damages.
Plaintiffs' specifications of error numbers 4, 10 and 11 present the question of whether the award was inadequate. Plaintiffs assert the jury erred when it awarded damages for medical expenses and lost wages without also awarding damages for pain and suffering. Plaintiffs further assert the lost-wage award was so low as to constitute an abuse of discretion, since it essentially provided compensation at the rate of the minimum wage for 22 months instead of a carpet installer's wage.
The jurisprudence in Louisiana holds that although a jury has great discretion in assessing damages, it is error of law for the jury to award special damages without awarding an amount for general damages as well. Evans v. Newton, 459 So.2d 586 (La.App. 5 Cir.1984); Odendahl v. Wild, 418 So.2d 36 (La.App. 4 Cir.1982); Ammons v. St. Paul Fire & Marine Ins. Co., 525 So.2d 60 (La.App. 3 Cir.1988). Thus, plaintiffs are correct in their assertion of error, and we must independently award an amount for pain and suffering. However, when the trier of fact has erred in this respect, the appellate court's authority is limited to amending the judgment to an award of general damages which would be reasonably within the discretion of the trial court. Evans v. Newton, supra; Odendahl v. Wild, supra.
In this case the evidence shows Mrs. Bienvenu began suffering pain in her neck and back the evening of the day of the accident. As a result she was examined the next day by Dr. E. Ward Sudderth, a general surgeon, and he diagnosed a severe cervical and lumbosacral sprain. Dr. Sudderth subsequently saw her on 24 occasions from July 21, 1986 until April 25, 1988 (shortly before trial). He stated he prescribed pain medication, muscle relaxants, and heat treatment for Mrs. Bienvenu. He also told her to avoid strenuous exercise.
During the course of her treatment, Dr. Sudderth testified Mrs. Bienvenu always exhibited muscle spasms and pain to some degree in her neck and back, and that the thoracic spine began to exhibit problems as well. Also during this period Mrs. Bienvenu suffered a spontaneous abortion and gained weight. Dr. Sudderth stated the spontaneous abortion was unrelated to her neck and back pain, but that the weight gain could aggravate the discomfort.
Dr. Sudderth believed Mrs. Bienvenu needs to be examined by a neurologist, neurosurgeon or orthopedic doctor, and that she needs more x rays, a CAT scan and other tests to determine the full extent of her neck and back injury. However, he noted she could not afford to do so. In addition, Dr. Sudderth was convinced that Mrs. Bienvenu could not perform her job as a carpet installer after the accident and doubts she could continue doing that type of work in the future.
On cross-examination, Dr. Sudderth was questioned about the numerous blood tests, urinalysis and x rays ordered by him for Mrs. Bienvenu during the course of her treatment. Dr. Sudderth explained those medical tests were necessary to rule out other medical problems as a source of her pain and to monitor her for possible side effects from her medication.
Dr. Mark Juneau, an orthopedic surgeon, testified on behalf of Mrs. Bienvenu. He stated he examined her on one occasion one year after the accident. While he admitted Mrs. Bienvenu exhibited subjective complaints of pain during the straight leg test, he concluded she did not exhibit any classic objective symptoms of a severe neck and back problem. Dr. Juneau said Mrs. Bienvenu was tender to the touch on her neck and back, but no spasms were present.
On cross-examination, Dr. Juneau stated he did not have Dr. Sudderth's records to review either prior to or after his examination of plaintiff. He admitted that back injury pain can vary from day to day. He concluded, however, that Mrs. Bienvenu suffered a cervical and lumbosacral strain which should have been resolved within six to eight weeks.
In addition to the medical testimony, the plaintiffs testified Mrs. Bienvenu was no longer able to perform her work as a carpet installer because the movements required *586 to perform it caused her pain. The Bienvenus further stated they worked together for four years prior to the accident installing carpet on jobs assigned by Jim Owens Company, Inc. The plaintiffs explained carpet installation involves lifting and carrying rolls of carpet and padding, bending, stooping, and walking on the knees in order to remove the old carpet and padding, carrying them to the van, cleaning the floors, and laying down and securing the new carpet and padding. In addition, plaintiffs claimed Mrs. Bienvenu has difficulty picking up the couple's young child and that she cannot perform household chores which require bending, lifting and stooping. They testified further that she cannot indulge in outdoor sports or recreational dancing.
In regard to Mrs. Bienvenu's lost wages, the parties produced joint tax returns and W-2 forms for the years 1983, 1984, 1985 and 1986. In 1983 their gross income was $11,692.30. After deductions of $5,104 for expenses, the couple netted $6,588. In 1984, the couple grossed $29,535, they deducted $25,059.47 and netted $4,475.53. The figures for 1985 were $28,737 in gross income, $21,059 in expenses and $7,678 in net income. The gross income in 1986 was $16,346.60 and the expenses were $12,176.52, leaving a net income of $4,170. Since half of those amounts were attributable to Mrs. Bienvenu's employment, her average net taxable income for four years totalled $4,863.94, and her average gross income totalled $10,788.86.
The jury in this case awarded Mrs. Bienvenu $13,000 in lost wages. Based on the evidence we find no manifest error in this regard. However, this court must award an amount for general damages since the jury legally erred in failing to award general damages after deciding she was entitled to medical expenses and lost wages. In this respect, we find Mrs. Bienvenu is entitled to $10,000 in general damages, an amount which would have been reasonably within the trial court's discretion.
In specifications of error numbers 5, 6, 7 and 19, plaintiffs contend that certain comments made by the witnesses or the judge during the trial were prejudicial. First, plaintiffs contend the jury was prejudicially informed of the $25,000 policy limits provided to defendant Patricia Sigler by defendant insurer State Farm. Next, plaintiffs assert the trial judge misled the jury by commenting just prior to the testimony of Dr. Sudderth that Dr. Sudderth's testimony was to be weighed as any other physician's testimony. Third, plaintiffs assert the trial judge erred when he explained to the jury prior to Dr. Juneau's testimony that "board certified" means the doctor has "the highest position in his field", and that "he's just about gone as far as he can go in medical training". Fourth, plaintiffs contend it was error for the trial judge to allow evidence to be presented related to Mr. Bienvenu's gambling winnings in 1986.
The law provides that an objection to evidence must be made at the time of its offer, and failure to object when an opportunity to do so exists, constitutes a waiver of the objection. Thibodeaux v. Western World Ins. Co., 391 So.2d 24 (La. App. 3 Cir.1980). Likewise, the failure to object to a jury instruction is considered a waiver of the objection if the objection is not made before the case goes to the jury for a decision. Bishop v. Shelter Ins. Co., 461 So.2d 1170 (La.App. 3 Cir.1984), cert denied 465 So.2d 737 (La.1985).
In regard to the four instances of alleged error above, a review of the record shows plaintiffs failed to object to any of the comments on evidence either at the time the comments were made or the evidence introduced or before the case went to the jury. Furthermore, the law at the time the case was tried did not prohibit mentioning the limits of liability to the jury. In addition, the trial judge's comments regarding Dr. Sudderth constituted a jury instruction on expert testimony generally. It did not instruct the jury on the weight to be given a particular physician's testimony, and the comments related to the board certification of Dr. Juneau were merely an explanation of the term. Finally, plaintiffs cannot complain about the evidence related to Mr. Bienvenu's gambling winnings either, whether or not those earnings *587 were admissible, since plaintiffs made no objection to the introduction of that evidence and in fact discussed the issue in closing argument.
The eighth error presented by plaintiffs concerns a jury instruction regarding the presumption of fault to be given to a vehicle which collides with the rear of a preceding vehicle. Plaintiffs submitted this as a special jury charge, but the trial judge refused to give it. Later, during the course of its deliberation, the jury requested a clarification as to the respective liabilities of the parties in a rear-end collision. The trial judge then gave the jury the plaintiffs' suggested charge. Regardless, plaintiffs argue they were prejudiced by the judge's failure to give the requested charge along with the other charges because counsel was unable to refer to it in closing argument, and thereby lost an advantage.
LSA-C.C.P. art. 1793 provides that the litigants may not assign as error the giving or the failure to give a jury instruction unless the party has made an objection to the refusal stating specifically the matter to which he objects and the grounds for the objection. In this case the record reflects plaintiffs did not specifically object to the trial judge's refusal to give the special charge, nor did they state grounds for the objection. Consequently, they cannot now complain about the trial judge's refusal to submit the requested charge to the jury.
In specification of error number 9, plaintiffs assert the trial judge erred in not separating the award for medical expenses into past and future expenses. Plaintiffs cite no authority to support this contention and the interrogatory provided to the jury, which did not require a breakdown, was not objected to by plaintiffs. The failure to object to jury interrogatories, like the failure to object to jury instructions, constitutes a waiver of the right to complain of the interrogatory on appeal. Bishop v. Shelter Ins. Co., supra.
Next, plaintiffs allege in specifications of error numbers 13 to 16 that the trial judge erred in allowing opposing counsel to make certain comments in closing argument which may have prejudiced plaintiffs' case. Specifically, plaintiffs complain (1) defendants' counsel implied to the jury that plaintiff could have future medical treatment done at Charity Hospital for little or no charge; (2) defendants' counsel implied incorrectly that it was plaintiffs' burden to provide defendants' physician with Mrs. Bienvenu's medical records, which they failed to do in order to "cover up" or hide her true condition; (3) defendants' counsel improperly referred to Mr. Bienvenu's work injury and worker's compensation benefits and implied it was not in his best interest for him to return to work; and (4) defendants' counsel improperly referred to Dr. Sudderth's treatment of Mrs. Bienvenu as a "rip off".
The parties in a case are entitled to a fair trial uninfluenced by appeals to passion and prejudice. Ogletree v. Willis-Knighton Memorial Hosp., 530 So.2d 1175 (La.App. 2 Cir.1988). However, counsel has great latitude in argument before a jury, subject to the regulation and control by the trial judge whose duty it is to make certain the argument stays within proper bounds. Temple v. Liberty Mutual Ins. Co., 330 So.2d 891 (La.1976). But regardless of whether or not a statement is prejudiciallike jury interrogatories, jury charges and evidentiary mattersthe issue is waived unless properly objected to in the trial court. Ogletree v. Willis-Knighton Memorial Hosp., supra. Here, plaintiffs failed to raise an objection to the comments and thus waived their right to complain on appeal.
Finally, plaintiffs assert the trial judge erred in sustaining an objection made by defense counsel to a comment plaintiffs' counsel made in closing argument. In his closing argument, plaintiffs' counsel asked the jury to include as an item of damage or loss wages Mrs. Bienvenu's inability to contribute to social security, thereby prejudicing the benefits she ultimately hopes to receive.
Neither party cites any authority for the proposition that the inability to pay into the social security fund is or is not a proper element of damages. The plaintiffs argue such a loss is a commonly known result of the inability of a self-employed person to *588 continue his or her employment. Defendants, on the other hand, contend Mrs. Bienvenu would not pay social security while disabled and unemployed, even if she were awarded loss of gross rather than net income.
An injured party is entitled to recover all his or her damages caused by the fault of another. LSA-C.C. art. 2315. Those damages, however, must be proven and the court may not assume a particular loss has occurred. In addition, counsel is required to confine his argument to the evidence admitted and inferences that may properly be drawn from it. Ogletree v. Willis-Knighton Memorial Hosp., supra.
In this case, the trial judge sustained defendant's objection on the basis the loss was speculative. However, while the testimony did not specifically refer to the social security payments made by the Bienvenus as self-employed persons, their tax returns showing their contributions were introduced into evidence. Those documents indicate Mrs. Bienvenu's share for each of the four years prior to the accident averaged $317. Thus, insofar as past losses are concerned, that item of damages is not speculative. She was unable to pay into the fund approximately $600 due to her unemployment. Because the jury apparently believed she suffered some past damages, albeit not as much as she claims to have suffered, we find she is entitled to recover an additional $600 for her past losses related to this item of damages.
Future loss of the ability to pay into the fund is more speculative. However, some degree of uncertainty exists in any award for future losses and a party should not be deprived of the right to recover this loss if it can be reasonably ascertained. In this case, it cannot be ascertained because no evidence was produced to show Mrs. Bienvenu can no longer perform any type of work and consequently will not be able to contribute to the fund in the future.
Accordingly, the judgment of the trial court is hereby amended to include an award of $10,000 for general damages and $600 for loss of past ability to contribute to the social security fund. The judgment is affirmed in all other respects.
Appellants and appellees are to pay the costs of this appeal equally.
AMENDED AND AFFIRMED.

ON APPLICATION FOR REHEARING.
PER CURIAM.
Two applications for rehearing were filed by the parties in this case. We are granting rehearing solely for the limited purpose of clarifying the liabilities of the parties. All other issues raised in the application are hereby rejected.
In respect to the liabilities of the parties we find in favor of State Farm Mutual Automobile Insurance Company on their third-party and reconventional demand against third-party defendant and defendant in reconvention, Arthur Bienvenu, relative to the additional damages awarded Wendy Bienvenu by this court on appeal. Arthur Bienvenu's liability to State Farm is limited to the percentage of fault (55%) assessed against him in the trial court's judgment.
As thus amended, our original decree is hereby reinstated.
JUDGMENT OF MAY 10, 1989 AMENDED AND REINSTATED.