752 So.2d 202 (1999)
John and Aura KARAGIANNOPOULOS
v.
STATE FARM FIRE & CASUALTY COMPANY and Stutton Corporation.
No. 94-CA-1048.
Court of Appeal of Louisiana, Fifth Circuit.
November 10, 1999.
Writ Denied December 10, 1999.
Writ Denied February 11, 2000.
*204 Aura Karagiannopoulos, John Karagiannopoulos, Metairie, Louisiana, In Proper PersonPlaintiffs/Appellants.
David K. Persons, Metairie, Louisiana, Attorney for Defendant/Appellee.
Panel composed of Judges SOL GOTHARD and THOMAS F. DALEY.
DALEY, Judge.
Plaintiff/Appellant, John Karagiannopoulos, filed a Petition for Personal Injuries alleging that when he slipped and fell on broken glass prior to exiting the door inside the business of Stutton Corporation located in Metairie, Louisiana. Four years later a Supplemental and Amended Petition was filed adding a loss of consortium claim on behalf of his wife, Aura Karagiannopoulos. The matter was continued a number of times and after substitution of counsel the matter proceeded to be tried by a twelve person jury on July 11th and 12th, 1994. In response to the special jury interrogatory the required majority of the jury concluded that the plaintiff, John Karagiannopoulos, did not fall in the premises of Stutton Corporation Company on March 18, 1988. Accordingly, the trial judge entered a judgment in favor of defendants dismissing plaintiffs' claim. Plaintiffs/Appellants appeal from the trial court's judgment.[1]
At oral argument appellants orally moved that Judge Cannella be recused from hearing this case. Judge Cannella recused himself and the appeal was considered by two of the original three panel members in accordance with C.C.P. Article 160.

FACTS:
John Karagiannopoulos rented a portion of a building from the defendant, Stutton Corporation, (Stutton), in which he operated an automobile repair business. The building was a metal frame warehouse *205 type building with an office in the front. Stutton occupied the front office portion and Karagiannopoulos leased the rear warehouse section. On March 18, 1988, Mr. Karagiannopoulos entered the office of Stutton in order to speak to the President of Stutton, Ms. Lorraine Studin. At trial he testified he went to the office and entered Sutton's lobby through the outside door. He walked three to four steps through the small lobby to the reception window and door. Mr. Karagiannopoulos spoke to a Stutton employee, Tanya Collins, who was in the interior office and asked that she have Ms. Studin call him. After delivering his message he turned around and headed back towards the outside door. Upon reaching to open the door he testified he stepped on a piece of glass and fell.

ASSIGNMENTS OF ERROR
The plaintiffs have appealed the trial court's judgment in proper person. In their brief, appellants make a listing of twelve assignments of error, which this court has summarized as follows:
1. The trial judge had no jurisdiction to hear this case, (Plaintiffs' Assignments of Error Numbers 1 and 6);
2. The trial transcript filed in the appeal record is inaccurate, (Plaintiffs' Assignments of Error Numbers 2, 11, and 12);
3. Fraudulent evidence was shown to the jury, (Plaintiffs' Assignment of Error Number 7);
4. The accident site was remodeled by State Farm, (Plaintiffs' Assignments of Error Numbers 3 and 4);
5. Appellant's counsel did not properly present appellant's case, (Plaintiffs' Assignments of Error Numbers 5 and 8);
6. Improper comments were made by the defense counsel during closing argument, (Plaintiffs' Assignment of Error Number 9); and
7. There were improper communications between the judge's staff and the jury, (Plaintiffs' Assignment of Error Number 10).
During the pendency of this appeal, plaintiffs have filed three other lawsuits stemming from the original lawsuit. These are:
1. Karagiannopoulos v. Redler Brown Williams Orthopedic ClinicA Professional Medical Corporation and/or James T. Williams, and Frank E. Beeson, III, suit Number 528-282, filed August 13, 1998;
2. Karagiannopoulos v. Judge Charles V. Cusimano, II, and/or Marcy Monrose and/or, Karen Burger, and/or Dawn Champagne, and/or DKren McEvers, suit Number 528-798, filed August 26, 1998; and
3. Karagiannopoulos v. State Farm Fire and Casualty Company, and/or Karla Haag, Stutton Corporation, and/or Lorraine Ravich Studin, Hailey, McNamara, Hall, Larmann, and Papale, and/or David K. Persons, Case Number 533-200, filed December 17, 1998.
Issues raised in these actions are not before this Court in this appeal.

DISCUSSION:

Plaintiffs' Assignments of Error Numbers 1 and 6:
Appellants contend that the trial judge, Judge Cusimano, had no jurisdiction to hear their case because it was improperly allotted to his division. A review of the record indicates that the appellants' case was filed on January 5, 1989 and allotted to Division K. Judge Eason was presiding over Division "K" at the time the petition was filed. Several pleadings and orders were filed and signed by Judge Eason. The last pleading filed in Division K is an Amended Pretrial Order filed by plaintiff on October 23, 1990. The next document in the record is Motion to Set for Trial on the Merits filed by State Farm, listing the case as being assigned to Division K. This motion was filed on July 15, 1991, and indicates that a pre-trial *206 conference was set for September 19, 1991. The next document in the record is a Pretrial Order signed by Judge Cusimano filed July 17, 1991.
The Local Rules of the 24th Judicial District Court in effect during this time indicate that the 24th Judicial District Court had a section entitled Domestic Relations Section. The Rules provide that the Domestic Relations Section was made up of two divisions presided over by the two judges most recently elected to the court. Judges assigned to the Domestic Relations Section handled only domestic cases. In 1990, Judge Eason, who presided over Division K (to whom this case was originally allotted) retired and a new judge was elected. As per the Rules, the newly elected judge for Division K was assigned to the Domestic Relations Section. According to a letter from Chief Judge Mc-Manus dated January 9, 1991, which is on file in the Clerk of Court's office in the 24th Judicial District Court, Division K, was removed from the regular criminal and civil allotment, and Division L, presided over by Judge Cusimano, who was in the Domestic Relations Section, was placed back into the regular criminal and civil docket. As per the procedure established in 24th JDC, all civil and criminal cases pending in Division K were transferred to Division L. There is no evidence in the record that this case was improperly allotted to Judge Cusimano.
Additionally, we note that the appellants did not object to the transfer of their case from Division K to Division L until after the jury verdict was rendered. The failure to object to the transfer until after a hearing has been deemed a waiver of objection to the transfer. See Roby v. Leonard, 209 So.2d 182 (La.App. 1st Cir. 1968).
The absence of any showing that the transfer to Division L was improper, combined with the plaintiffs failure to object to the transfer until after the verdict was rendered. We conclude that Judge Cusimano had jurisdiction to hear this case and that Assignments of Error 1 and 6 lack merit.

Plaintiffs' Assignments of Error Numbers 2, 11, and 12:
The appellants make several allegations as to the accuracy of the trial transcript. These alleged inaccuracies were first presented to this court in a letter dated January 3, 1995 addressed to the Clerk of this Court. On February 8, 1995, plaintiff filed a Motion for Devolutive Appeal, docketed as Number 94-CA-1048 again listing several inaccuracies in the trial transcript. This court considered plaintiffs' letter to the Clerk of Court as a Motion to Correct and Supplement the Lodged Record on Appeal. In response to these allegations, on February 9, 1995, this Court issued an order to the trial court to conduct an evidentiary hearing to address the completeness of the lodged record. The order suspended the briefing dates for this appeal. Judge Cusimano and several other Judges of the 24th Judicial District were recused from conducting this hearing. On January 10, 1997, the alleged inaccuracies of the transcript were again raised to this Court by appellants in Writ Application Number 97-C23. In response, on February 27, 1997, this court ordered the trial court to hold an evidentiary hearing on this matter within thirty days. In an attempt to comply with this order, the defendant, State Farm, filed four different motions to set the evidentiary hearing. Each time State Farm filed said motion, the appellants filed a Motion to Quash Defendant's Motion for an Evidentiary Hearing. In the mean time, appellants had filed suit in Federal Court against several 24th Judicial District Court Judges. This led to the recusal of more Judges and the evidentiary hearing was not held. The Louisiana Supreme Court appointed a retired Judge to conduct the evidentiary hearing. The hearing was set for February 10, 1999, and was to be held along with other motions in the separate lawsuits pending against appellants' trial counsel, the trial Judge, and others. Appellants moved for an ex parte *207 continuance, which was denied by the newly appointed judge. Appellants then alleged the newly appointed judge was biased in favor of the defendants. This led to the newly appointed judge's recusal. Another new judge was appointed by the Supreme Court to hold the evidentiary hearing, but before it could be held, appellants filed a Motion to Release the Suspension of the Appeal and Send out New Briefing Dates. This Court signed an order granting such, and the appeal was set for oral argument on the record as originally received.
In their motion to release the suspension, appellants argue that because the "Legal Counsel for 24th Judicial District Court" in the suit filed against Judge Cusimano and his staff, suit Number 528-798, failed to respond to a subpoena ducus tecum, the allegations in the written statement attached to the subpoena, (stating that Judge Cusimano improperly removed this case from Division K to Division L, that Judge Cusimano never had jurisdiction to hear this case and that plaintiffs' charges against Judge Cusimano are valid), are deemed admitted for the purposes of this appeal and there is no longer a need for an evidentiary hearing to address the inaccuracies in the transcript. We disagree with appellants assertions. The subpoena and allegations contained therein were filed in a separate lawsuit and are not before this court on appeal.
Appellants have continuously alleged that the trial transcript contains numerous errors as to the testimony of witnesses, yet they have offered little proof to show the existence of such errors. The only evidence of a possible inaccuracy in the transcript is an affidavit by appellant's physician, whom the transcript indicates was the first witness to testify at trial, stating that there was another gentleman testifying when he entered the court room. The affidavit does not identify the other witness, nor the subject matter of his testimony, or the proceeding in which this other witness was testifying. Louisiana Code of Civil Procedure article 2132 provides:
A record on appeal which is incorrect or contains misstatements, irregularities or informalities, or which omits a material part of the trial record, may be corrected even after the record is transmitted to the appellate court, by the parties by stipulation, by the trial court or by the order of the appellate court. All other questions as to the content and form of the record shall be presented to the appellate court.
We further note that Code of Civil Procedure Article 372 provides that the court reporter shall report verbatim the testimony of the witnesses, any other evidence introduced, any objections and the rulings of the court. Article 2130 provides that the transcript shall serve as the statement of the facts of the case. The Code further provides that the Clerk of Court shall certify and date the record for the appellate court. C.C.P. art. 2127.1.
A review of the appellate record in this case indicates that the court reporter certified that the transcript was "a true and correct transcript of the proceedings heard in Open Court" on July 11 and 12, 1994 in the matter entitled "John Karagiannopoulos versus State Farm, et al" and numbered Civil Docket Number 374-448. The Deputy Clerk of Court certified that the appellate record:
"consists of copies from the original record, and contains all of the pleadings, documents and evidence in the matter entitled: John & Aura Karagiannopoulos versus State Farm Fire & Casualty Insurance Company and Stutton Corporation under the number 374-488; I further certify that there are contained therein true copies of all minutes entries from said record, and a detailed list of all of the pleadings, documents and evidence in the order of filing thereof."
Plaintiff's allegations as to the irregularities and inaccuracies in the transcript were addressed by this Court in two separate orders dated February 9, 1995 *208 and February 27, 1997, in which this Court ordered an evidentiary hearing be held to address plaintiffs' alleged inaccuracies. In her Motion to Release the Suspension of the Appeal and Send Out New Briefing Dates, plaintiff stipulated an evidentiary hearing was not necessary. In the absence of any proof as to inaccuracies in the transcript, this court is unable to conclude that the certified transcript is inaccurate. See Shaheen v. White, 53 So.2d 450, (La. App. 1st Cir.1951). Given the Deputy Clerk's and Certified Court Reporter's certifications, and absent substantial proof of alteration or a stipulation by all counsel to the contrary, we must presume the appellate record before us is correct. Guilbeau v. C & D Reprographics-Lafayette, Inc., 568 So.2d 206 (La.App. 3rd Cir., 1990), writ denied, 571 So.2d 653 (La. 1990). Hence, we must address this appeal using the transcript before us.

Plaintiffs' Assignment of Error Number 7:
Appellant contends that fraudulent pictures of the accident scene, Exhibits D1-5, and a fraudulent lease, Exhibit D20, unsigned by Mr. Karagiannopoulos, were shown to the jury. The pictures in question were admitted into evidence during the second day of trial. Ms. Studin, the President of Stutton Corporation, testified that these pictures depict the accident scene, but admitted that the exterior awning and vinyl flooring had been replaced since the accident. The unsigned lease admitted into evidence is a copy of the lease which was being negotiated at the time of the fall.
At the beginning of the proceedings on the second day of trial, the attorney for the defendants stated:
Judge, could we just, before the jury comes in, we've all agreed to each other's exhibits ... exhibits D 1 through 5 are photographs ... 20 is a lease of the premises in question from '85 to '87. 21 is a lease of the premises from '87 to '89 ...
The record does not contain any objections by either side as to any documents and pictures admitted into evidence. The failure of a party to make a contemporaneous objection to the admission of evidence during trial, waives the right of a party to complain that the evidence was improperly admitted on appeal. Harris v. West Carroll Parish School Bd., 605 So.2d 610, (La. App. 2nd Cir.1992).

Plaintiffs' Assignments of Error Numbers 3 and 4:
Appellants contend that after the deposition of Mr. Karagiannopoulos was taken, State Farm remodeled the accident site to correct all of the defects enumerated by Mr. Karagiannopoulos which contributed to his fall. There was testimony that the vinyl flooring was replaced due to the floor being worn and the awning was replaced after being damaged in a storm. Mr. Karagiannopoulos testified that the office had a bare concrete floor. The testimony of the former Stutton employees was that the floor of the lobby was never bare concrete, it was always covered with vinyl and there were always rubber backed rugs on the vinyl. While Mr. and Mrs. Karagiannopoulos testified that the glass entry door was smoked glass at the time of the accident, the other witnesses testified that the door was always clear glass. The record was void of any testimony that the glass entry door was changed. There was a factual dispute between plaintiffs and the defendants as to the condition of the lobby at the time of this incident, which was decided by the jury. We find nothing in the record to support plaintiff's contention that the accident site was fraudulently remodeled after the accident.

Plaintiffs' Assignments of Error Numbers 5 and 8:
Appellants go into great detail regarding their allegations that their trial counsel did not adequately or properly present their case. The quality of appellants' counsel's representation is not an *209 appropriate issue for this appeal. Appellants have filed a separate suit against their counsel alleging inadequate representation, suit Number 528-282, and those issues will be addressed in that suit. Thus, we will not consider appellants' complaints regarding the adequacy of their trial counsel's representation because these complaints are not properly before us on this appeal of the judgment rendered in appellants' slip and fall suit. We further note that the inadequacy of an attorney in a civil suit is not enough to evoke constitutional concern. See Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). We do note that the record contains no evidence that appellants' were dissatisfied with the conduct of their attorney during trial.

Plaintiffs' Assignment of Error Number 9:
Appellants contend the defense counsel made improper comments to the jury during his closing argument. Our jurisprudence holds that trial counsel's great latitude when arguing before a jury is subject to the trial judge's control to confine the argument to evidence which has been properly admitted. Ogletree v. Willis-Knighton Memorial Hosp., 530 So.2d 1175 (La.App. 2nd Cir., 1988). The record reflects that when instructing the jury, the trial judge stated:
The opening statements and closing arguments of counsel are not evidence, and only the testimony and objects placed in evidence are to be considered by you in determining the facts of this case.
Thus, even if we were to find the references to the untruthfulness of the appellants in the defendant's attorney's closing argument were improper, we find the trial judge properly instructed the jury that closing arguments could not be considered evidence.
Additionally, the record is void of any objections to the defendant's closing argument during trial. As in the case of evidentiary matters, objections to statements made during closing arguments must be made contemporaneously; failure to lodge a contemporaneous objection in the trial court waives the right to complain on appeal. Bienvenu v. State Farm Mut. Auto. Ins. Co., 545 So.2d 581, (La.App. 5th Cir.1989).

Plaintiffs' Assignment of Error Number 12:
Appellants contend that there were improper communications between the trial judge's staff and the jury, alleging the trial judge's law clerk was in the jury room during jury deliberations. Appellants' contentions concerning misconduct are not supported by the record, nor have appellants presented any evidence, such as affidavits from jurors, to support their contentions.
Code of Civil Procedure Article 1972(3) provides that juror misconduct is grounds for a new trial, although not every instance of juror misconduct necessitates the granting of a new trial. Uriegas v. Gainsco, 94-1400 (La.App. 3rd Cir. 9/13/95), 663 So.2d 162, 663 So.2d 162, writ denied, 95-2485 (La.12/15/95), 664 So.2d 458. Juror misconduct or improper behavior by a juror must be determined by the facts and circumstances of each case. Id. Conversations unrelated to the case at hand between jury members and a party or an attorney during the course of trial have been held not to constitute improper behavior absent a showing of prejudice. See Lejeune v. Union Pacific Railroad, 96-294 (La.App. 3rd Cir. 3/12/97), 693 So.2d 804, 693 So.2d 804. Contact between jurors and court personnel during deliberations has been found insufficient to grant a new trial. See Parker v. Centenary Heritage Manor Nursing Home, 28,401 (La.App. 2nd Cir. 6/26/96), 677 So.2d 568, 677 So.2d 568, writ denied, 96-1960 (La.11/1/96), 681 So.2d 1271; Gormley v. Grand Lodge of State of Louisiana, 503 So.2d 181 (La.App. 4th Cir.1987).
*210 Plaintiffs allege the trial judge's law clerk was in the room with the jury during deliberations and instructed the jury to rule in favor of State Farm. However, there is nothing in the record to support these allegations. Plaintiffs' allegations regarding contact between the trial judge's staff and the jury seem to be based on appellants apparent misunderstandings of routine proceedings in a jury trial. The judge and his staff are the means of communication between the jury and the attorneys. Plaintiffs' bare assertions of misconduct between the trial judge's staff and the jury are insufficient to establish that the jury's verdict was improper. See Lee v. Automotive Cas. Ins. Co. 96-517, (La.App. 3rd Cir. 11/6/96), 682 So.2d 995.

CONCLUSION
Appellate review of a jury's factual findings is limited to a determination of whether the record contains a reasonable factual basis for the jury's findings. In the case before us, the jury was presented with opposing stories. The jury heard testimony from Mr. Karagiannopoulos that he slipped on a piece of glass and fell to the floor in the lobby of Stutton's office. Mr. Karagiannopoulos testified that he did not see the piece of glass that he slipped on when he walked into the building. The jury heard testimony from two former employees of Stutton who testified that when they walked through the lobby shortly before Mr. Karagiannopoulos, there was no glass on the floor of the lobby. They did admit, however, that there was frequently glass in the parking lot of the building, which was a result of patrons of nearby bars throwing beer bottles into the parking lot. No one saw Mr. Karagiannopoulos fall. Mr. Dennies testified that he heard a crash, which sounded like breaking glass, then went into the lobby where Mr. Karagiannopoulos was lying in the threshold of the door, with broken glass nearby. Defense counsel argued to the jury that Mr. Karagiannopoulos staged the accident and did not injure himself on the day in question. The jury was asked, "Do you find that the plaintiff, John Karagiannopoulos, fell on the premises of the defendant, Stutton Corporation, on March 18, 1988?" They jury answered "No," concluding Mr. Karagiannopoulos did not fall. While there was no direct evidence that Mr. Karagiannopoulos staged the accident, his credibility was seriously undermined when he testified regarding his pre-injury earnings. The jury heard testimony from Mr. Karagiannopoulos that he had a contract with Imperial Trading Company to repair and maintain their vehicles for which he was compensated approximately $70,000.00. The jury was able to examine the plaintiffs' tax return and see that this $70,000.00 did not appear on the return. Both plaintiffs were unable to explain why the $70,000.00 did not appear on the return. Additionally, Dr. Williams, who testified on behalf of the defendants, testified that he examined Mr. Karagiannopoulos on September 25, 1990, at the request of the Social Security Administration. Dr. Williams testified that Mr. Karagiannopoulos told him he had accidents in 1978 and 1982. Dr. Williams specifically testified that Mr. Karagiannopoulos did not inform him of any other accidents.
The rule of "falsus in uno falsus in omnibus" provides that if one element of a witness' testimony is proved to be untrue, the entirety of that witness' testimony may be rejected by the jury. This doctrine does not require rejection of the witness' total testimony. The weight to be given the remainder of the witness' testimony is to be determined by the trier of fact, given the circumstances of each case. Anglin v. White, 572 So.2d 779 (La.App. 4th Cir.1990).
In Rosell v. ESCO, 549 So.2d 840, (La. 1989), the Court stated:
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of *211 credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneous clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
[citations omitted]
Furthermore, on appellate review, it is presumed that the trial court judgment is correct and was decided in accordance with the law; the appellants have the burden of proving otherwise. When the evidence presents two opposing views of an accident, as in the case before us, the reviewing court may assume that the trial court accepted the version of the accident which accords with its judgment. Karisny v. Sunshine Biscuits, Inc., 215 So.2d 201, (La.App. 3rd Cir.1968).
If this court had been the trier of fact, it may have concluded that Mr. Karagiannopoulos slipped upon exiting the office, however, the testimony of all the witnesses in this case provides a reasonable factual basis for the jury's finding that Mr. Karagiannopoulos did not fall on the Stutton premises. We do not find that the jury committed manifest error in finding that Mr. Karagiannopoulos did not fall on the Stutton premises. Accordingly, the judgment of the trial court is affirmed.
Appellant is cast with costs of this appeal.
AFFIRMED.
CANNELLA, J., RECUSED.
NOTES
[1] At oral argument appellants orally moved that Judge Cannella be recused from hearing this case. Judge Cannella recused himself by order dated September 10, 1999 and the appeal was considered by two of the original three panel members in accordance with C.C.P. Article 160.