934 So.2d 878 (2006)
June DUGAS
v.
Hamid MASSIHA, M.D. and ABC Insurance Company.
Nos. 05-CA-737, 05-CA-969.
Court of Appeal of Louisiana, Fifth Circuit.
June 28, 2006.
*880 Jacob J. Amato, Jr., Cheryl L. Wild, Gretna, Louisiana, for Plaintiff/Appellee, June Dugas.
Richard G. Duplantier, Jr., J. Michael Daly, Jr., Peter A. Bourgeois, Galloway, Johnson, Tompkins, Burr & Smith, New Orleans, Louisiana, for Defendants/Appellants, Kathleen Wild and American Casualty Company of Reading, PA.
J. Marc Vezina, Andrea C. Caplan, Molly M. Gattuso, Vezina and Gattuso, L.L.C., Gretna, Louisiana, for Defendant/Appellant/Amicus, Hamid Massiha, M.D.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
THOMAS F. DALEY, Judge.
These consolidated appeals stem from a medical malpractice lawsuit in which the trial court rendered judgment in favor of plaintiff. For the reasons that follow, we dismiss the appeal filed by Hamid Massiha, M.D. and affirm the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY:
In March of 1997, Hamid Massiha, M.D. performed a procedure known as a blepharoplasty on plaintiff, June Dugas. This procedure was performed to remove "bags" from her lower eyelids. On March 27, 1997, Ms. Dugas returned to Dr. Massiha's office for a post-operative examination and to have the sutures removed. Dr. Massiha's nurse, defendant herein Kathleen Wild, removed the sutures from Ms. Dugas' right eye. Ms. Dugas filed suit against Dr. Massiha and Wild claiming that during the removal of the sutures Wild dripped a disinfecting agent, Cidex, into her right eye causing a chemical burn to that eye. The parties stipulated that Ms. Dugas' damages did not exceed $50,000.00 and proceeded to a judge trial. The trial judge took the matter under advisement at the conclusion of the trial. On February 22, 2005 judgment was rendered in favor of Ms. Dugas and against Dr. Massiha and Wild. On March 4, 2005, the judgment was amended to include Wild's insurer. On April 14, 2005, Wild and her insurer filed a Suspensive Appeal from the March 4, 2005 judgment.
Ms. Dugas filed a Rule to Show Cause why Dr. Massiha should not be required to pay the judgment against him. On August 2, 2005, the trial court granted plaintiff's rule and ordered that the March 4, 2005 judgment may be executed by plaintiff as to Dr. Massiha. Dr. Massiha filed a Devolutive Appeal from the August 2, 2005 judgment on August 24, 2005.
Ms. Dugas filed a Motion to Dismiss Dr. Massiha's appeal arguing the August 2, 2005 judgment was not a final judgment. We agree. A final judgment is one which determines the merits of an action, whether in whole or in part. C.C.P. art. 1841. A judgment must be final to be appealable. C.C.P. art.2083. The merits of this matter were decided by the February 22nd and March 4th judgments; the August 2, 2005 judgment merely made the March 4th judgment executable against Dr. Massiha. Hence, the August 2, 2005 judgment is not appealable and appeal No. 05-CA-969 filed by Dr. *881 Massiha is hereby dismissed[1].

APPEAL NO. 05-CA-737:
The March 4, 2005 judgment found that Wild "failed to properly rinse or wipe of [sic] a pair of tweezers dropping a caustic chemical onto the plaintiffs [sic] eye and face." The trial court found that this act of medical negligence was obvious and did not require the plaintiff to prove the applicable standard of care or breach thereof. On appeal, Wild contends this was error because expert testimony was required.
LSA-R.S. 9:2794 provides in pertinent part:
A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., an optometrist licensed under R.S. 37:1041 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
Plaintiff bears the same burden of proof in a suit against a nurse. Cook v. Jefferson Parish Hosp. Service Dist. No. 2, 04-17 (La.App. 5 Cir. 5/26/04), 876 So.2d 173. However, expert testimony is not always necessary for the plaintiff to meet the burden of proof if the medical and factual issues are such that a lay person could perceive negligence based on the conduct that occurred. Pfiffner v. Correa, 94-0992 (La.10/17/94), 643 So.2d 1228. In such circumstance, the plaintiff must still prove a casual connection between the defendant's fault and the injury suffered by plaintiff. Id.
At the trial in this matter, Ms. Dugas testified that as Wild was removing the sutures from her eyelid, Wild had difficulty removing one stitch and obtained a different set of tweezers. Ms. Dugas explained that when Wild came over to her with the new tweezers "chemical from the container poured into my eye" and it felt like "liquid fire dropped in my eye." Ms. Dugas testified *882 that she asked to see the doctor, but Wild stated the doctor was with another patient.
Wild testified that she used different instruments to remove the sutures from Ms. Dugas' right eye. She explained that the new instruments were soaking in a disinfectant solution called Cidex. Wild testified that her usual procedure is to take the instrument out of the box, rinse it with saline, and wipe it with gauze. She testified that she followed this procedure in this instance. Wild acknowledged that while removing the sutures from the right eye, Ms. Dugas stated that her eye was irritated and Wild flushed Ms. Dugas' right eye. Wild testified that after she flushed the right eye, Ms Dugas had no further complaints.
Based on the facts and circumstances in this case, we hold the trial court did not err in finding expert medical testimony was not required to prove negligence in this case. In fact, dripping acid on a patient is one of the enumerated acts listed in Pfiffner, supra in which expert medical testimony is not required. While we acknowledge that Cidex is not an acid, it is a substance that is harmful to the eye[2].
The trial judge was presented with two scenarios from opposing testimony: Ms. Dugas testified that Cidex dripped into her right eye while Wild was removing the sutures and Wild testified that she rinsed Cidex from the tweezers and wiped them. The trial judge chose to believe the scenario set forth by Ms. Dugas. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Karagiannopoulos v. State Farm Fire & Cas. Co., 94-1048 (La.App. 5 Cir. 11/10/99), 752 So.2d 202. In applying the manifestly erroneousclearly wrong standard to the findings made by the trial court, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo. Id. Thus, we find no error in the trial court's determination that Wild failed to properly rinse the tweezers and dropped Cidex into plaintiff's eye. We now turn to the issue of causation.
In her second Assignment of Error, Wild contends the trial court erred in finding plaintiff's alleged injuries were caused by exposure to Cidex.
Numerous medical records were admitted into evidence. The medical records indicate that Ms. Dugas returned to Dr. Massiha's office on March 28, 1997. She was examined by Dr. Khoobehi, who was a resident physician temporarily working in Dr. Massiha's office. The office note written by Dr. Khoobehi on that date was read into the record by Dr. Massiha. This note states that Ms. Dugas had a "chemical irritation of the right eye". Dr. Khoobehi referred Ms. Dugas to an ophthalmologist.
The deposition of Dr. Richard Bessent, an ophthalmologist, was admitted into evidence. Dr. Bessent testified that he first examined Ms. Dugas on March 31, 1997. Dr. Bessent testified that Ms. Dugas stated that she had gotten Cidex in her eye the previous week. She complained of blurred vision in the right eye with excessive tearing. Dr. Bessent noted swelling of the conjunctiva of the right eye. He explained that this condition would not be expected following the type of surgery Ms. Dugas had undergone. His impression was chemical conjunctivitis of the right *883 eye. When Dr. Bessent examined Ms. Dugas on June 24, 1997, she continued to complain of feeling as if a foreign body was in her right eye. Dr. Bessent explained that her examination showed subepithelia infiltrates in the right eye, which represents an irritation of the cornea. On July 9, 1997, Ms. Dugas continued to complain of a foreign body sensation in the right eye. When she returned to Dr. Bessent on August 20, 1997, she complained of foreign body sensation along with tearing and burning of the right eye. On the December 23, 1997 visit, Ms. Dugas complained of flashes and floaters, which Dr. Bessent attributed to a posterior vitreous detachment. Dr. Bessent explained this was totally different from her prior complaints. Dr. Bessent testified that he last examined Ms. Dugas on January 6, 1998, at which time her symptoms had improved. Dr. Bessent further testified that Ms. Dugas initial presentation was consistent with an acute chemical injury, but that she did not suffer any long term effects from that injury.
Dr. Peter Kastl, who was accepted by the court as an expert in ophthalmology and biochemistry, testified on behalf of the defendants. Dr. Kastl testified that there is nothing in the medical literature regarding Cidex causing damage to the eyes. On cross-examination, Dr. Kastl admitted that if Cidex got into someone's eyes there would be an eye irritation and some of the epithelium of the eye would "flake off". He explained that this would cause the eye to be more susceptible to infection.
The product information sheet for Cidex was admitted into evidence. This sheet clearly states "contact with eyes causes damage". The sheet further cautions to avoid contact with skin.
Our review of the trial court's factual findings is limited to a determination of whether the record contains a reasonable factual basis for these findings. Rosell v. ESCO, 549 So.2d 840, (La.1989). The office note of March 28, 1997, by Dr. Khoobehi, stating that Ms. Dugas had a "chemical irritation of the right eye," along with Dr. Bessent's testimony that Ms. Dugas' examination of March 31, 1997 was consistent with chemical conjunctivitis provides a sufficient factual basis for the trial court's finding that plaintiff suffered an injury to her eye as a result of Wild's negligence. We now turn to the issue of damages.
The trial court awarded Ms. Dugas $1,213.81 in past medical expenses and $45,000.00 in general damages. On appeal, Wild contends this is excessive.
Ms. Dugas testified that when the chemical from the container holding the tweezers "poured" into her eye, it felt like "liquid fire dropped in my eye". She testified that she was driven home, took pain medication, and went to bed. Ms. Dugas testified she had a blister on her right eye the next morning. She described this blister as extending from the right corner of her right eye to the iris. Her eye was completely closed due to swelling. Ms. Dugas testified that she experienced severe pain in her eye for a long time"at least a year or longer". The pain and excessive tearing in her eye interfered with her driving to such a degree that she would have to pull off of the road and wait for the pain and tearing to subside. Ms. Dugas further testified that due to the injury in her right eye, she no longer does art work or sews. Ms. Dugas explained that following the chemical burn to her right eye, she had numerous infections in that eye. She also expressed concern about losing her eye. Ms. Dugas described a scar on her face where the Cidex dripped. She testified that she puts makeup over the scar, but is still questioned about the scar by other people.
*884 Aside from Dr. Bessent, Ms. Dugas also sought treatment from Dr. Earl Nelson, another ophthalmologist. Dr. Nelson testified that he first examined Ms. Dugas in September 1999, at which time she gave a history of a chemical burn in he right eye. Dr. Nelson testified that Ms. Dugas stated her right eye was still bothering her as a result of this burn. Dr. Nelson explained that it would not be unreasonable for a chemical burn of the eye to take two to three years to resolve. Dr. Nelson records reflect that Ms. Dugas often complained of irritation and infection in her right eye.
In reviewing an award of general damages, the initial inquiry for the appellate court is whether the jury abused its discretion in assessing the amount of damages. Cone v. National Emergency Services, Inc., 99-0934 (La.10/29/99), 747 So.2d 1085. When it comes to awarding general damages, the discretion vested in the trier of fact has been described as vast, such that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). A comparison of prior awards is only appropriate after the reviewing court has concluded that an abuse of discretion has occurred. Cone, supra.
Ms. Dugas testified as to the intense and severe pain she suffered after the Cidex entered her eye. She described fear over losing her eye and explained how the pain and excessive tearing in her eye interfered with her driving and hobbies. The medical records indicated that she suffered several infections in her right eye during the several years following this incident. Dr. Nelson testified that it would not be unreasonable for a chemical burn to the eye to take two to three years to resolve. Additionally, Ms. Dugas testified that she has a scar on her face from the Cidex and this scar was mentioned in the trial court's judgment. Based on the above testimony, we find no abuse in the trial court's award of general damages.

CONCLUSION:
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Generally, in this Court, when a judgment is found not to be appealable and an appeal is dismissed, the appellant is given thirty days from the judgment to file a Supervisory Writ. This option was not given in this matter because the parties entered into a stipulation that plaintiff would not execute or take any action to enforce the March 4, 2005 judgment against Dr. Massiha until this Court has ruled on this appeal. Because we are affirming the March 4, 2005 judgment, any writ filed by Dr. Massiha regarding the August 2, 2005 judgment would be moot.
[2] The product information sheet for Cidex, which was admitted into evidence, states "contact with eyes causes damage."